■ BARBARA WINKLER, Appellant, v KINGSTON HOUSING AUTHORITY et al., Respondents. [686 NYS2d 513] —Spain, J. Appeal from a judgment of the Supreme Court (Fromer, J.H.O.), entered November 12, 1997 in Ulster County, upon a decision of the court in favor of defendants.

Plaintiff was hired by defendant Kingston Housing Authority (hereinafter the Authority) to work as an account clerk/typist in November 1993. By letter of May 12, 1995, the Authority suspended plaintiff without pay for a period not to exceed 30 days pursuant to Civil Service Law § 75 (3), pending a determination of the disciplinary proceedings instituted against her. The Authority served her with a statement setting forth four charges of misconduct. In a letter dated May 17, 1995, plaintiff denied the charges and demanded a hearing pursuant to Civil Service Law § 75.

The disciplinary hearing commenced before the Authority's Board of Commissioners on the morning of June 8, 1995 at which plaintiff was represented by two attorneys, John Beisel and Louis Klein. Following the testimony of plaintiff's supervisor, defendant Steven Fischer, the Authority's Executive Director, and one other witness, both pertaining to the misconduct charges, the hearing was adjourned around noontime, at which time the parties engaged in settlement negotiations in an effort to resolve the charges. A verbal agreement was reached by all parties and the hearing was permanently terminated based thereon; unfortunately, its existence and terms were not placed on the record despite the presence of a court reporter. Subsequent efforts to memorialize the agreement in a written signed document were not successful. Plaintiff never returned to work, having removed her personal belongings from her desk on May 15, 1995 and, at Fischer's direction, turned in her keys on May 16, 1995. Plaintiff never submitted a signed letter of resignation.

Plaintiff commenced this action in January 1996 alleging

that defendants had deprived her of her due compensation since her 30-day suspension ended in violation of Civil Service Law § 75. Defendants alleged in their answer that plaintiff had agreed to a negotiated settlement of the charges and sought a declaration that pursuant thereto plaintiff's employment had been terminated as of May 15, 1995. Supreme Court subsequently denied plaintiff's motion for summary judgment but granted her request for a preliminary injunction prohibiting her continued suspension. On appeal, we modified by reversing that part of the order which granted injunctive relief (*see*, 238 AD2d 711).

After a nonjury trial, Supreme Court dismissed the complaint, concluding that plaintiff's employment had been terminated as of May 15, 1995. The court found that the parties had reached a verbal settlement agreement during the June 8, 1995 hearing which provided for plaintiff to receive six months of salary from that date and one year's health benefits; additionally, it was agreed that she would leave her employment and the Authority would cooperate with her efforts to be placed by the Civil Service Commission (hereinafter Commission) on a "preferred list" for civil service employment. The court rejected plaintiff's claim that she had not agreed to vacate her position, finding that she had consented to the settlement in which she agreed to leave defendant's employment in exchange for the inducements agreed upon; the court concluded that although she had not signed a written resignation, she had effectively resigned pursuant to the agreement by her actions subsequent to the hearing in not returning to her employment. Plaintiff has appealed.

We now affirm. Plaintiff's first contention is that she was denied the protections of Civil Service Law § 75 because defendants denied her a hearing and a final determination of the disciplinary charges against her. We disagree. Plaintiff was served with a statement of the charges and a hearing was held at which plaintiff was represented by counsel in full compliance with Civil Service Law § 75 (*see*, *Matter of Johnson v Director, Downstate Med. Ctr., State Univ. of N. Y.*, 52 AD2d 357, 367-368, *affd* 41 NY2d 1061). After detailed negotiations, the parties entered into a verbal agreement in full satisfaction of all disciplinary charges.

It is firmly established that a public employee who enjoys permanent status may waive the Civil Service Law § 75 right to a hearing and a final determination, or contractual rights to a hearing, by entering into a settlement agreement disposing of the charges, so long as the waiver is knowingly and intel-

ligently undertaken and serves as the consideration for the curtailment of pending disciplinary proceedings (*see, Whitehead v State of New York Dept. of Mental Hygiene*, 71 AD2d 653, 654, *affd on mem below* 51 NY2d 781; *see also, Matter of Abramovich v Board of Educ.*, 46 NY2d 450, *cert denied* 444 US 845; *Matter of Simpson v Abate*, 213 AD2d 190; *Matter of Wilson v Jackson*, 161 AD2d 652; *Matter of Nedd v Koehler*, 159 AD2d 344). Such agreements and waivers are not contrary to the public policy of this State (*see, Matter of Abramovich v Board of Educ., supra*) and constitute valid enforceable contracts (*see, Matter of Shannon v State of New York Dept. of Correctional Servs.*, 131 AD2d 915, 916, *lv denied* 70 NY2d 607; *Matter of Miller v New York State Dept. of Correctional Servs.*, 126 AD2d 831, *affd on mem below* 69 NY2d 970).

The record supports the conclusion that plaintiff knowingly and voluntarily entered into the stipulation of settlement disposing of the charges and terminating the pending hearing (*see, Matter of Abramovich v Board of Educ., supra*, at 457-458), notably, plaintiff does not allege otherwise. She admitted she was in favor of settling the charges and was vigorously represented by counsel throughout the negotiations. Her attorneys consulted with her at every turn and prior to her consent to the final terms, as Supreme Court determined, and she does not argue that her collective bargaining agreement required a signed settlement agreement (*cf., Matter of Miller v Coughlin*, 59 NY2d 490). While it would have been preferable for the parties to have recorded the agreement in some fashion, an agreement on the record or in writing is not required by Civil Service Law § 75, case law or the Statute of Frauds and plaintiff does not assert otherwise (*see,* General Obligations Law § 5-701 [a] [1]; *see also, Anametrics Servs. v Clifford A. Botway, Inc.*, 159 AD2d 247). Plaintiff's claim to compensation beyond the 30-day suspension period must be rejected as she settled the charges during that suspension, waiving a final determination on those charges. Thus, plaintiff was accorded the full panoply of procedural and substantive rights guaranteed by Civil Service Law § 75 which she waived by entering into the agreement.

Plaintiff's second contention is that Supreme Court erroneously concluded that the parties had in fact reached a verbal settlement agreement. She claims that the parties only reached a conceptual understanding and left material terms to be negotiated at a later date. Plaintiff's claim is belied by the con-

sistent testimony of all five of the witnesses who participated in the negotiations, including plaintiff and her attorneys.*

Beisel and Klein, plaintiff's counsel, testified at trial that they personally negotiated with Fischer, Albert Spada, an Authority Board member, and with the Authority's counsel, in an effort to resolve the charges. Beisel regularly communicated with plaintiff, who sat just outside the negotiation room. Beisel and Klein further testified that an agreement was reached to which plaintiff consented whereby the suspension would be vacated, no finding of guilt on the charges would be made, plaintiff would receive six months of salary and health insurance benefits for one year, and that defendants would not oppose plaintiff's efforts to be placed on the Commission's preferred list, if eligible, and to receive unemployment compensation. Contrary to plaintiff's contentions on appeal, Beisel testified that the Authority's counsel did not guarantee that plaintiff would be placed on a preferred list or that she would receive unemployment benefits, but represented that the Authority would cooperate in plaintiff's effort to achieve those results. As Supreme Court found, the preferred list determination is made by the Commission, not the Authority. Spada and Fischer similarly testified that these were the terms of the agreement to which all parties had agreed and that the hearing was discontinued upon the consent of plaintiff's counsel and was never reconvened because they had entered an agreement resolving the matter.

Plaintiff herself testified that she participated through counsel in the negotiations and consented to the verbal agreement, but asserted that she had believed she would be laid off and that she never agreed to resign. Klein testified that plaintiff's resignation was not part of the verbal agreement, but rather, plaintiff's position would be abolished to make her eligible for the preferred list. However, Spada and Fischer testified that plaintiff's submission of a letter of resignation was part of the verbal agreement, and Beisel's subsequent correspondence to the Authority's counsel in response to its proposed written settlement expressly presumed plaintiff's resignation. Moreover, plaintiff's responsive letter to Beisel outlining her demand of terms to be included in a signed agreement did not object to the inclusion in the proposed written stipulation of the requirement that plaintiff submit a letter of resignation.

---

* On defendants' motion made after plaintiff commenced this action, plaintiff's counsel who had negotiated the agreement were disqualified in anticipation of their being called as witnesses.

In reviewing a trial court's decision rendered after a nonjury trial, this Court may independently consider the probative weight of the evidence and the inferences to be drawn therefrom and grant the judgment we deem appropriate (*see, Krafchuk v State of New York*, 250 AD2d 962, 964; *Walsh v State of New York*, 232 AD2d 939, 940; *see also, Diaz v State of New York*, 256 AD2d 1010). Where, as here, the findings of fact rest in large measure on the trial court's assessment of the credibility of witnesses, they are entitled to deference (*see, id.; see also, Thoreson v Penthouse Intl.*, 80 NY2d 490, 495). In determining whether an agreement has been reached the court looks not to the parties' after-the-fact professed subjective intent, but rather at their objective intent as manifested by their expressed words and conduct at the time of the agreement (*see, Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d 397, 399-400). Upon our review of the record we find that there is ample, consistent evidence to support Supreme Court's determination that plaintiff verbally consented to the settlement fully aware of its material terms, including the requirement that she would resign her position in exchange for dismissal of the charges and the other inducements conferred thereunder (*see, Matter of Miller v Coughlin*, 59 NY2d 490, 494, *supra*). Our conclusion is bolstered by plaintiff's actions following the hearing, including the fact that she never attempted to report back to work. That it was ultimately determined at trial that plaintiff's resignation would render her ineligible for the preferred list did not preclude the court's finding that plaintiff had agreed to vacate her position.

Further, we see no basis upon which to disturb Supreme Court's conclusion that although plaintiff never signed a written resignation, she had, in effect, voluntarily resigned pursuant to the agreement by not returning to work (*see, Matter of Abramovich v Board of Educ.*, 46 NY2d 450, 455, *supra; Matter of Smith v Kunkel*, 152 AD2d 893, *appeal dismissed* 74 NY2d 944). Plaintiff's subsequent refusal to tender the agreed-upon letter of resignation does not entitle her to renegotiate the verbal agreement. Finally, the fact that, following their verbal agreement, the parties were unsuccessful in their endeavor to execute the contemplated written agreement did not preclude the finding, fully consistent with the trial testimony, that the parties had entered this binding verbal agreement on June 8, 1995.

Clearly, the procedures employed in entering into this verbal agreement, which did not include a simultaneous recording of the terms, should not serve as a model to guide future settle-

ment negotiations (*contrast, Matter of Abramovich v Board of Educ., supra*). Indeed, the failure to utilize the available court reporter to make an official record was inexplicable.

Cardona, P. J., Mercure, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed, without costs.